Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Quentin A. Roberts (State Bar No. 306687)
Email: qroberts@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Individual and Representative Plaintiffs*
*Julie Dean and Suzanne Jones and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE DEAN and SUZANNE JONES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LULAROE, LLC; LLR, INC.; DEANNE BRADY; and MARK STIDHAM,<br><br>Defendants. | Case No. 3:17-cv-01579<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Julie Dean and Suzanne Jones, on behalf of themselves and all others similarly situated, allege the following based upon personal knowledge as to allegations regarding themselves, and on the investigation of their counsel and information and belief as to all other allegations:

## I.  NATURE OF ACTION

1.  This is a class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants LuLaRoe, LLC; LLR, Inc.; DeAnne Brady; and Mark Stidham (collectively "Defendants"), arising from their advertising, marketing and sale of defective leggings and other clothing.

2.  Defendants sell brightly colored and patterned clothing, such as dresses, tops and leggings throughout the United States. Defendants' leggings (hereafter "Leggings" or "Products") are the subjects of the lawsuit. Defendants' Products, however, are not available in retail stores, or through the company website at www.lularoe.com.

3.  Instead, Defendants' business model relies on recruiting members of the general public, called Fashion Consultants (also known as "Fashion Retailers" or "Independent Retailers"), who buy the Products from Defendants at wholesale, and then sell the Products to consumers through in-home and online "boutiques".

4.  Defendants' business model is known as multi-level marketing ("MLM") or pyramid selling.  Other companies that operate under the MLM business model include Tupperware, Beachbody, Mary Kay, and Herbalife.

5.  As of 2017, there are approximately 80,000 Fashion Consultants selling Defendants' clothing, including the Products, throughout the United States.

6.  To become a Fashion Consultant, a person must make an initial investment ranging from $5,000 to $9,000, in what is called an "onboard package," which is essentially a package of clothing and marketing materials.

7.  LuLaRoe was founded in 2012 by DeAnne Brady and Mark Stidham, and the business has become very successful, very quickly.  Reports indicate that sales have soared 600 percent to approximately $1 billion as of 2016.

8.      While Defendants and some Fashion Consultants are pleased with the company, many of the customers who buy the Products for personal, family or household use (hereinafter, "Customers") are not.  Specifically, thousands of Customers have taken their outrage to Facebook and other online forums to complain about the defective Products. Specifically, Customers have complained that the leggings are of such poor quality that holes, tears, and rips appear before wearing, during the first use or shortly thereafter. The leggings have also been described as tearing as easily as "wet toilet paper."

9.      Other problems with the Products include leggings that have one leg that is substantially larger (or smaller) than the other, and leggings that are supposed to be for adults but instead would only fit a child.

10.     Defendants are well aware that their Products are defective.  With regard to the leggings, Patrick Winget, the head of production for Defendants, reportedly wrote in a company-wide email about that, "The leggings may get holes, *because we weaken the fibers* to make them buttery soft.  We have done all we can to fix them." (Emphasis added).

11.     Defendants' record for ignoring and/or not satisfactorily addressing customer complaints about the defective Products has earned it an "F" rating from the Better Business Bureau (the "BBB").

12.     It is clear that Defendants have chosen to sacrifice the quality of their Products in order to meet the growing demand at the expense of Customers.  The extent to which they have done this, however, is unacceptable.  Thousands of Customers across the United States are now stuck with defective Products because Defendants will neither issue refunds or make exchanges for Customers and instead steer Customers to the Fashion Consultants to deal with defective or damaged Products.

13.     Unfortunately for Customers, Defendants will not make refunds to Fashion Consultants for defective Products, and impose various barriers for exchanges. As a result, most Fashion Consultants will not take back defective Products from Customers.

14.     Defendants, as the manufacturers of the Products, would have been in exclusive possession of information providing them the knowledge about the quality of such Products.

Defendants provide no disclosures on any Products about the defective and negligent construction or quality of the Products, even though they represent that their Products are of acceptable quality and fit for normal use.

15.     At all relevant times, Defendants misrepresented and suppressed material facts about the quality of their defective Products and negligently designed, manufactured, marketed, advertised, promoted, sold and/or distributed such Products.

16.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure to redress Defendants' failure to disclose and provide adequate warning to Fashion Consultants and Customers that the Products Defendants designed, manufactured, distributed and/or sold were and are defective and unfit for ordinary use.

17.     Plaintiffs allege claims on behalf of themselves and all others similarly situated for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the Consumers Legal Remedies Act, Cal. Bus. & Prof. Code §§ 1750, *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, for breach of express and implied warranties, and unjust enrichment.

## II.     THE PARTIES

### A.     Individual and Representative Plaintiffs

18.     Plaintiff Julie Dean is a resident and citizen of Boston, Massachusetts.

19.     Plaintiff Dean purchased leggings made by Defendants in 2016 from a Fashion Consultant. Plaintiff Dean saw photos of the leggings online and believed they were suitable for ordinary use. After wearing a pair of black leggings for only a couple hours, they developed tiny holes throughout. Another patterned pair developed a hole so big she could put her finger through them.

20.     Plaintiff Dean would like to purchase additional leggings in the future, however, she will not know whether they are defective or not because she purchases them online and cannot see or inspect them before she pays for them.

21.     Plaintiff Suzanne Jones is a resident and citizen of Lafayette, California.

22.     Plaintiff Jones purchased leggings made by Defendants in 2016 from a Fashion Consultant. Plaintiff Jones saw photos of the leggings online and believed they were suitable for ordinary use. One pair of the leggings she could not even get past her knees because they were so small as if they were manufactured for a child. Two other pairs of leggings developed holes when she pulled the leggings on with her fingers.

23.     Plaintiff Jones would like to purchase additional leggings in the future, however, she will not know whether they are defective or not because she purchases them online and cannot see or inspect them before she pays for them.

**B.     Defendants**

24.     LuLaRoe, LLC is a direct sales and multi-level marketing company with its headquarters in Corona, California.

25.     LLR, Inc. is a multilevel-marketing company headquartered in Corona, California.

26.     LuLaRoe, LLC and LLR, Inc. are collectively referred to herein as "LuLaRoe."

27.     DeAnne Brady is one of the founders of LuLaRoe who at all relevant times has controlled and directed the activities of LuLaRoe, including those described herein, from California. Among other things, Brady advertised and marketed the Products, including by posting photos wearing the Products on the Internet at www.lularoe.com and on social media, such as Facebook and Twitter. Brady also jointly made the decisions regarding Product manufacturing and directed Fashion Consultants, including by formulating return policies and procedures. DeAnne Brady is a resident and citizen of California.

28.     Mark Stidham is the CEO and one of the founders of LuLaRoe who at all relevant times, along with his wife DeAnne Brady, controlled and directed the activities of LuLaRoe, including those described herein, from California. Among other things, Stidham jointly made decisions regarding Product manufacturing and directed Fashion Consultants, including by formulating return policies and procedures. Mark Stidham is a resident and citizen of California.

29.     LuLaRoe, LLC; LLR, Inc.; DeAnne Brady; and Mark Stidham are collectively referred to herein as "Defendants" unless otherwise stated.

## III.   JURISDICTION AND VENUE

30.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of the proposed Class, Plaintiffs, are citizens of a different state than Defendants.

31.     The Northern District of California has personal jurisdiction over Defendants because they conduct substantial business in this District and it is in this District where Defendants have employed, and continue to employ, the advertising, marketing, manufacturing and sales activities detailed herein.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendants conduct operations, including sales and advertising, and thus transact substantial business within this District.

## IV.   FACTUAL ALLEGATIONS

### A.     Defendants' Business Model and Rapid Success

33.     LuLaRoe was founded in 2012 by DeAnne Brady, a former network marketer, and her husband, Mark Stidham.

34.     Defendants' business model depends on the recruitment of Fashion Consultants. In order to attract individuals to undertake this position, Defendants cater towards busy women with children who want a flexible working opportunity to earn money. A main pitch of Defendants is that mothers can earn money while selling their clothing to friends in their living rooms and/or through online forums, such as Facebook.  Millennial mothers make up many of Defendants' Fashion Consultants.

35.     Fashion Consultants are encouraged to sell the Products to their family and friends at parties at home or online known as "pop-ups."

36.     As of today, Defendants have over approximately 80,000 Fashion Consultants. Reports indicate that the company "on boards" approximately 150 to 200 new Retail Sellers everyday, with the goal of getting 300 new Fashion Consultants per day.

37.     The initial investment for an individual to become a Fashion Consultant is expensive; it costs between $5,000 and $9,000 to buy an "onboard package" which includes approximately 380 pieces of clothing and marketing materials (the "Onboard Package").  One report alleges, however, that Defendants encourage Fashion Consultants to keep about $20,000 in inventory at any given time, and further encourages them to reinvest in their business.

38.     Conservative back-of-the-envelope calculations, based solely on the daily new Retail Sellers' Onboard Packages, demonstrates that Defendants are generating millions of dollars in revenue every day from their new Fashion Consultants.  That revenue excludes any partnership deals or subsequent purchases of Defendants' clothing by Fashion Consultants. Based off of these generous numbers, it is evident Defendants want to sell Onboard Packages to as many new Fashion Consultants as they can, even if this means providing them with clothing that has holes in it and/or has been negligently manufactured.

39.     In order to become a Fashion Consultant, one can visit Defendants' website at www.lularoe.com and click on the tab, "Join the Movement."  The website boasts: "Becoming a LuLaRoe Fashion Consultant can provide you opportunity to have the means, the time, and the flexibility to pursue your passions and to more fully enjoy the company of those you love."[1]  In reality, however, many of the Fashion Consultants are ultimately caught in crosshairs between Defendants and the friends and family who they sold defective Products to.

40.     Additionally, the burden of making enough sales and thus a profit requires that Fashion Consultants deal with considerable volume.  Historically, there have been many critics of the companies that operate as multi-level marketing businesses, and LuLaRoe is no exception.

---

[1] Join the Movement, http://www.lularoe.com/join-the-movement-page (last visited March 13,

41.     Critics of Defendants believe that the high cost to become a Fashion Consultant is simply to convince the potential Fashion Consultants that it is a real business that will provide a real return on investment. Turning a profit, however, is difficult. "[Defendants] estimate[] the average commission that reps earn is a paltry $85 per year, according to Tracy Coenen, a forensic accountant and critic of the MLM industry, citing a 2015 income disclosure statement from LuLaRoe. In a January post on her blog, Coenen described LuLaRoe as a 'grand scheme made to look like a real business.'"[2]

42.     Aside from investing thousands of dollars and having to sell hundreds if not thousands of pieces of Defendants' clothing to make a return on their investment, excluding the time and expenses involved, Fashion Consultants' ability to be profitable is also greatly diminished because of the defective Products they receive from Defendants.  As explained below, the time, effort, and expense involved with returns and exchanges also fall on Fashion Consultants.

43.     Thus, not only have Defendants outsourced the selling of their Products and the financial risk associated with that to Fashion Consultants, they have also shifted the burden of returns, exchanges, and customer complaints to them.

**B.     Defendants' Defective Products**

44.     Defendants, through their website, on social media, and through the Fashion Consultants, represent to the public that their Products are both comfortable and fit for normal, or even, athletic use.

45.     With respect to their Products, Defendants state: "Our leggings are ultra stretchy and super soft. They're as close to your own skin as you can get with all the perks of, ahem, not

---

[2] LuLaRoe's business is booming, but some sellers are fuming, http://www.wtsp.com/money/consumer/lularoes-business-is-booming-but-some-sellers-are-fuming/420039896?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+wtsp%2Ftopstories+(WTSP.com+10+News+Top+Stories (last visited March 14, 2017).

being naked. You can sport them at your favorite Pilates class or throw on some cute booties and wear them out for a girls night!"[3]

46.     Thus, not only are Defendants impliedly warranting that their Products are suitable for regular use, they explicitly warrant the Products are fit for athletic use.

47.     The Products, however, are unfit for normal and athletic use. Customers across the United States have complained that the leggings are ripping and developing holes after as little as a few hours of wear. Sometimes the leggings tear in embarrassing places while Customers are out in public.

48.     Below are two photos, out of hundreds that have been posted online, showing the defective Products:

//

//

_____

[3]Adult Leggings, http://www.lularoe.com/adult-leggings (last visited March 14, 2017).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT



### C.   Defendants Have a "No Return" Policy

49.     Customers who bought and received defective Products, however, are not allowed to return them to Defendants, either for a refund or an exchange. Defendants' website confirms this policy: "[A]ny request pertaining to returns, damages, or shipping should go to the original Retailer you purchased from. THANK YOU."

50.     Thus, when a Customer attempts to complain directly to Defendants, he or she is either ignored, or told to contact the Fashion Consultant from whom they purchased the Products. The Fashion Consultant is supposed to contact Defendants to return the defective Product(s) and receive a credit.

51.     Fashion Consultants, however, have reported that when placing a call to Defendants in order to return damaged goods, they are placed on hold for an hour, and then

disconnected.  Fashion Consultants also report that emails sent to Defendants regarding the defective Products go unanswered.  It is therefore unsurprising that Defendants have earned themselves an "F" rating on the BBB.

52.     Based on Defendants' return policies, Fashion Consultants will not provide refunds and in the few cases where they will offer an exchange, it will not be for the same item that a Customer purchased. This is because one of Defendants' gimmicks is that they only make a limited number of patterns, about 5,000 of a particular print per item. As a result, Defendants have been able to create a high demand for a particular pattern, which are called "Unicorns". In other words, a highly sought after pattern is a "Unicorn" and allows Fashion Consultants to charge significantly more. A Customer, who receives a damaged "Unicorn," will never receive a refund and if in the rare circumstance is allowed by a Fashion Consultant to make an exchange will not receive the same item, however, due to the limited numbers of patterns that Defendants offer.

53.     Additionally, to the extent a Fashion Consultant allows an exchange, a Customer is responsible for paying for the cost of shipping the defective Product to the Fashion Consultant, and for the Fashion Consultant's cost of shipping the replacement item to the Customer. Indeed, Defendants require Fashion Consultants to bear the cost of returning defective Products.

54.     Moreover, many Fashion Consultants state that they will only exchange unworn, unwashed clothing with tags attached that were originally purchased from them within a limited number of days.  This excludes thousands of Customers who wore the Product once, sometimes for as little as a few minutes, at which point, the Product ripped, tore, and developed a hole. Customers who purchased Products during an on-line pop-up hosted by multiple-consultants may not know the consultant from whom they purchased the Products from, and hence, will be unable to exchange the Product(s).

55.     To make matters worse, during weekly conference calls that DeAnne Brady and Mark Stidham hold with Fashion Consultants, Mark Stidham told Fashion Consultants not to

spend time and energy sending defective Products back to the Company, but that they should try to re-sell them to Customers, including by learning to sew and repairing any defective Products.

**D.**   **Defendants Have Been on Notice that their Products are Defective**

56.     Unsurprisingly, thousands of outraged Customers across the United States have posted complaints about the defective Products they have purchased.

57.     The complaints regarding the defective Products are well documented and can be easily found on a variety of Internet forums, websites, and groups.  Below is a sample of typical complaints posted on the BBB's website:

- The quality has become extremely poor. The leggings developed holes within minutes of wearing them.

- Multiple items purchased have had holes, literally fallen apart in my hands, uneven lengths (leggings, one leg 4 inches longer than the other) and poor customer service.

- LuLaRoe is telling all staff and consultants to write positive reviews here - this info came directly from a high level "coach". Be WARY of this slimy company.

- The leggings are garbage. I wore a pair from Vietnam for 4 hours and the whole seat of the pants developed tiny holes.

- I purchased two pairs of leggings brand new from two separate consultants. Both got holes within the first few hours of wearing them. Lularoe won't return them, so I'm just out $60. Stay far away!

- This company's products are horrible. I purchase[d] a pair of leggings and they ripped the first day I ever wore them. I tried to exchange them and was not refunded or given another pattern.

- I ordered my first pair of LulaRoe Leggings, my first purchase from them in general, in December. After my first time wearing them, [I] found numerous pin holes in the butt area. I contacted the consultant I bought them from, she had me return them to her to exchange them. However, I had to pay for the shipping to both return the item and receive the new pair! So, now I've paid nearly $10 extra, and I'm afraid this pair will rip as well.

58.     Moreover, there is a Facebook group specifically dedicated to Customers who bought Defendants' defective Products, called LuLaRoe Defective/Ripped/Torn Leggings And Clothes.  As of March 23, 2017, there are approximately 19,000 members.

59.     Members of the LuLaRoe Defective/Ripped/Torn Leggings Facebook group post complaints about the defective Products on a daily basis.

### E.     Defendants Acknowledge Their Products Are Defectives

60.     Defendants know that their Products are defective, whether it has to do with "weakening the fibers" to make the material soft, as the head of production reportedly said, or whether it is because Defendants have decided to meet their growing demand with cheaper materials, toxic chemicals, labor, and design from overseas countries, they know the Products are defective, especially in light of the large number of Customer complaints they have received over the past several months.

61.     Despite knowing that the Products are defective, Defendants refuse to issue refunds.  Defendants also fail to employ proper quality control measures to avoid shipping out defective Products to Fashion Consultants.

### CLASS ALLEGATIONS

62.     Plaintiffs bring this action on behalf of themselves and the members of the proposed Class under Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure. The proposed Class consists of the following:

> All individuals residing in the United States who, after March 31, 2016, purchased for personal, family or household use, LuLaRoe branded leggings manufactured outside of the United States.

63.     Plaintiffs reserve the right to redefine the Class, including by proposing multi-state Classes, prior to class certification after having the opportunity to conduct discovery.

64.     Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

65.     Numerosity. Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Defendants' records.

66.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are numerous questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether, during the Class Period, Defendants misrepresented that the Products were suitable for wear and ordinary use when they were not;

(b)     Whether, during the Class Period, Defendants concealed material facts concerning the quality of their Products;

(c)     Whether Defendants failed to employ quality control measures to avoid shipping defective Products;

(d)     Whether Defendants' advertisement and representations concerning their Products constituted false advertising under California law;

(e)     Whether Defendants engaged in deceptive, unfair, unlawful and/or fraudulent business practices under California law;

(f)     Whether Class members are entitled to restitution, and in what amount; and

(g)     Whether Defendants should be enjoined from continuing the practices alleged herein.

67.     Typicality. Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the members of the Class and, like all members of the Class, Plaintiffs purchased defective Products advertised, marketed and manufactured by Defendants.  Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

68.     Adequacy. Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately assert and protect the interests of the Class, and retained counsel experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

69.     <u>Superiority of Class Action.</u> Fed. R. Civ. P. 23(b)(3).  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

70.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

71.     <u>Injunctive and Declaratory Relief.</u> Fed. R. Civ. P. 23(b)(2).  The conduct of Defendants is generally applicable to the Class as a whole and Plaintiffs seek equitable remedies with respect to the Class as a whole.  As such, the systematic policies and practices of Defendants make declaratory or equitable relief with respect to the Class as a whole appropriate.

72.     <u>Issue Certification.</u>  Fed. R. Civ. P. 23(c)(4).  In the alternative, the common questions of law and fact, set forth in Paragraph 61, are appropriate for issue certification on behalf of the proposed Class.

**COUNT I**
***Unfair Business Practices***
**(California Business & Professions Code §§ 17200, *et seq.*
Unfair Competition Law ("UCL"))**

73.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

74.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

-15-

75.     During the relevant time period, Defendants engaged in unfair business practices by selling defective Products to Fashion Consultants knowing that such Products would be sold to members of the general public.

76.     During the relevant time period, Defendants engaged in unfair business practices by selling defective Products to Fashion Consultants knowing that such Products would be sold to members of the general public, while formulating a policy to refuse refunds.

77.     During the relevant time period, Defendants engaged in unfair business practices by selling Products to Fashion Consults knowing that such Products would be sold to members of the general public, while failing to employ appropriate quality control measures.

78.     During the relevant time period, Defendants also engaged in unfair business practices by misrepresenting and omitting material facts they were obligated to or should have disclosed regarding the fact the Products were known to be defective.  Defendants were in exclusive possession of such information but did not disclose it, even though such information went to the quality and ordinary use of such products. In failing to disclose the defective nature of the Products, Defendants concealed material facts from the public.

79.      Such information with respect to the defectiveness of the Products was material to Plaintiffs in that as reasonable consumers they would have considered such information to be a substantial factor in deciding whether to purchase Products from Defendants. Plaintiffs and the Class Members had a reasonable expectation that Defendants' Products would not be inherently defective but would be fit for their ordinary use.

80.     Defendants' practices constitute unfair business practices in violation of the UCL because, among other things, they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and/or any utility of such practices is outweighed by the harm caused to consumers.  Defendants' practices violate the legislative policies of the underlying statutes alleged herein: namely, protecting consumers from unfair business practices and preventing persons from being injured by misleading advertising.  Defendants' practices caused substantial injury to Plaintiffs and members of the Class and are not outweighed by any benefits, and Plaintiffs and members of the Class could not have reasonably avoided their

injuries.

81.     As a result of Defendants' unfair business practices, Plaintiffs have suffered injury in fact and a loss of money or property in terms of purchasing the Products that are unsuitable for their ordinary use as clothing, which they would not have purchased at the prices they paid had the true nature of the Products not been misrepresented or had the material facts been fully disclosed.

82.     Pursuant to Business and Professions Code §17204, Plaintiffs and the Class are entitled to an order of this Court enjoining Defendants' alleged misconduct, and any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Products by ordering the payment of full restitution plus interest.  Otherwise, Plaintiffs, Class Members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

## COUNT II
### *Fraudulent Business Practices*

**(California Business & Professions Code §§ 17200, *et seq.*)**

83.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

84.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive reasonable consumers.

85.     Defendants have misrepresented the quality and suitability of use of their Products.  Specifically, Defendants have disseminated, through their network of Fashion Consultants, clothing that is defective and not fit for ordinary use.

86.     Throughout the relevant time period, Defendants omitted material facts they were obligated to disclose regarding the defective nature of their Products, namely that they are of such poor quality they are not fit for ordinary use. The facts concealed or not disclosed by

-17-

Defendants with respect to the defective Products at issue are material in that Plaintiffs would have considered these facts to be a substantial factor in deciding whether to purchase and use Defendants' Products.

87.      Plaintiffs and the Class members had a reasonable expectation that the Products they were purchasing for use would not be defective and would be fit for wear.  The thousands of complaints posted on various online communities and message boards substantiate these expectations and assumptions.

88.      Based on the facts detailed herein, Defendants were under a duty to Plaintiffs and the Class to disclose the unfit nature of the defective Products. Such a duty existed because Defendants had exclusive possession and knowledge of facts—that the Products were unsuitable for normal use due to their poor quality—that were not available to consumers and that were material.

89.      Such acts and practices of Defendants, as described herein, constitute "fraudulent" business practices under California Business and Professions Code §17200, *et seq.* in that such conduct was and is likely to deceive reasonable consumers into believing Defendants' Products were suitable for normal use.

90.      As a result of Defendants' fraudulent business practices, Plaintiffs have suffered injury in fact and a loss of money or property by buying Products that are unsuitable for their ordinary use as clothing, which they would not have otherwise purchased.

91.      Pursuant to Business and Professions Code §17204, Plaintiffs and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendants, and any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Products by ordering the payment of full restitution plus interest. Otherwise, Plaintiffs, Class Members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

**COUNT III**
*Unlawful Business Practices*
**(California Business & Professions Code §§ 17200, *et seq.*)**

92.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

93.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

94.     Defendants' deceptive and misleading business practices and acts, as described herein, breached and continue to breach the implied warranty of merchantability and constitute breach of express warranty. Defendants' conduct also violated and continues to violate California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by representing that the Products' quality is suitable for normal use when it is not.

95.     Plaintiffs reserve the right to identify other violations of law as the facts develop.

96.     As a result of Defendants' unlawful business practices, Plaintiffs have suffered injury in fact and a loss of money or property in terms of purchasing the Products that are unsuitable for their ordinary use as clothing, which they would not have purchased at the prices they paid had the true nature of the Products not been misrepresented or had the material facts been fully disclosed.

97.     Pursuant to Business and Professions Code §17204, Plaintiffs and the Class are entitled to an order of this Court enjoining such conduct on the part of Defendants, and any other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Defendants' ill-gotten gains, including the monies Defendants received or saved as a result of its wrongful acts and practices detailed herein, and restoring to any person in interest such monies paid for Defendants' Products by ordering the payment of full restitution. Otherwise, Plaintiffs, Class Members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

<u>**COUNT IV**</u>

*Violation of the California False Advertising Law,*

**(California Business & Professions Code §§ 17500,** *et seq.***)**

98.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

99.     California's False Advertising Law ("FAL") prohibits unfair, deceptive, untrue, or misleading advertising, including false statements as to worth, value and former price.

100.     The FAL makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

101.     Defendants' practice of representing to the public, through its website, through Fashion Consultants, and various social media handles and accounts, that their Products are suitable for normal use and are of an acceptable quality, is an unfair, deceptive or misleading advertising practice because it gave the false impression that the Products were not defective.

102.     On each day throughout the Class Period, Defendants, with the intent to induce members of the public to purchase Products offered from the various Fashion Consultants, made or caused to be made each of the untrue or misleading statements, claims, or representations described herein.

103.     Defendants knew, or by the exercise of reasonable care should have known, that these claims were untrue, deceptive, or misleading.

104.     When Defendants made or caused to be made the untrue or misleading claims, statements, or misrepresentations described herein to consumers in California, Defendants failed to adequately disclose material facts pleaded herein, namely, that the Products were defective and unsuitable for ordinary use.  Plaintiffs request that this Court order Defendants to restore this money to Plaintiffs and all other respective Class Members, and to enjoin Defendants from continuing to violate the FAL, or from violating the FAL in the future.  Otherwise, Plaintiffs, the Class they seek to represent, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT V**

*Violation of the California Consumers Legal Remedies Act*

**(California Civil Code §§ 1750, *et seq.*)**

105.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

106.    Defendants, with the intent to induce members of the public to purchase its Products, made or caused to be made false or misleading claims to consumers throughout California and the United States.

107.    Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code §1761(d).

108.    Customers' purchases of Defendants' Products are "transactions" within the meaning of California Civil Code §1761(e).

109.    The Products purchased by Plaintiffs and other Class Members throughout the Class Period are "goods" within the meaning of California Civil Code §1761(a).

110.    Defendants engaged in unfair methods of competition, or unfair or deceptive acts or practices against Plaintiffs and Class Members in violation of the California Consumers Legal Remedies Act (the "CLRA"), by making false or misleading statements of fact concerning the quality of the Products and their ability to be used as intended. The express and implied representations made by Defendants concerning the Products' quality were deceptive, misleading, and/or false.

111.    Defendants violated and continue to violate the CLRA by engaging in the following deceptive practices proscribed by the California Civil Code §1770(a) that constitute transactions intended to result in, and that did result in, the sale of the Products herein to Plaintiffs and the Class:

      a.    Representing that the goods have characteristics, uses or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

      b.    Representing that the goods are of a particular standard, quality or grade if it is of another (Cal. Civ. Code §1770(a)(7));

1    c.    Advertising goods with the intent not to sell them as advertised (Cal. Civ.

2  Code §1770(a)(9)); and

3    d.    Representing that the goods have been supplied in accordance with a

4  previous representation when they have not (Cal. Civ. Code §1770(1)(16)).

5    112.    As described herein, by purchasing Defendants' Products, Plaintiffs and the

6  Class suffered damage by the wrongful acts and practices of Defendants, in violation of

7  California Civil Code §1781. Absent these acts or practices, Plaintiffs and Class Members

8  would not have purchased Defendants' Products.

9    113.    Pursuant to California Civil Code §1780(a)(2), Plaintiffs, on behalf of themselves

10 and all Class Members, request that this Court enjoin Defendants from continuing to engage in

11 the unlawful and deceptive methods, acts or practices alleged herein.  Unless Defendants are

12 permanently enjoined from continuing to engage in such violations of the CLRA, consumers

13 will continue to be harmed by Defendants' acts or practices in the same way as those acts or

14 practices have harmed Plaintiffs and Class Members.

15    114.    Plaintiffs will provide notice to Defendants of the alleged violations of the CLRA

16 and the UCL in compliance with Cal. Civ. Code § 1782(a). If Defendants do not cure the

17 alleged misconduct, Plaintiffs will amend this Complaint to seek damages pursuant to this

18 claim.

19                              **<u>COUNT VI</u>**
20                *Breach of Implied Warranty of Merchantability*

21    115.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged

22 herein.

23    116.    Every sale of consumer goods that are sold at retail are accompanied by the

24 manufacturer's and the retail seller's implied warranty that the goods are merchantable.

25    117.    "Defendants" are "manufacturers" and "retail sellers," and the Products

26 Defendants sold are "consumer goods".

27

28

118.    Defendants expressly and impliedly warranted to Plaintiffs and Class members that the Products were merchantable and fit for use as clothing for wearing and covering based on the advertising, marketing and sale of the Products as alleged herein.

119.    Defendants knew the Products were not merchantable in that they were not reasonably fit for the ordinary purposes for which they were manufactured and sold, namely, wearing and covering. Specifically, the Products disintegrated and developed small holes which turned into larger holes and no longer provided covering as intended or were suitable for wear in public. Other Products had one leg that was shorter or larger than the other. The Products were not sold "as is" nor as "with all faults."

120.    Defendants were repeatedly put on notice of these issues through thousands of Customer complaints. Despite, however, receiving notice from its Customers of these claims requesting that they resolve the complaints, Defendants have refused to make refunds to Plaintiffs and Class members.

121.    Because the Products are used by consumers and such warranties are either expressly made through advertising and statements made by Defendants or are implied by law in all consumer transactions, Plaintiffs and the Class members who purchased such products are entitled to incidental and compensatory damages directly from Defendants.

## COUNT VII

### *Breach of Express Warranty*

122.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

123.    Defendants are merchants as defined by applicable Uniform Commercial Code provisions and sold the Products to Plaintiffs and members of the Class.

124.    Defendants expressly warranted via their advertising, statements, website information and through their Fashion Consultants that the Products were suitable for wear, daily activities and covering.

125.    The statements made by Defendants are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the state promises. Plaintiffs placed importance on Defendants' representations.

126.    Defendants' Products did not conform to the express representations; they were not suitable for wear, daily activities and covering.

127.    As a result of Defendants' breach of the express warranty, Plaintiffs and the Class were injured and seek damages.

## COUNT VIII
### *Unjust Enrichment*

128.    Plaintiffs incorporate and reallege by reference each and every allegation above as if fully set forth herein.

129.    Plaintiffs and Class members conferred benefits on Defendants by purchasing the Products.

130.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the defective Products that were improperly manufactured, supplied, and/or distributed into the stream of commerce. Retention of those monies under these circumstances is unjust and inequitable because Defendants misrepresented that the Products were of a quality fit for the purpose for which they were intended. These misrepresentations caused injuries to Plaintiffs and the Class members because they would not have purchased the Products if the true facts had been known.

131.    Because Defendants' retention of the benefits conferred on them by Plaintiffs and the Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand judgment against Defendants as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel;

B.      A judgment awarding Plaintiffs and all members of the Class damages as alleged above incurred by Plaintiffs and Class members as a result of Defendants' breach of express and implied warranties;

C.      A judgment awarding Plaintiffs and all members of the Class restitution or other equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class as a result of their unlawful, unfair and fraudulent business practices described herein;

D.      An order enjoining Defendants from continuing to violate the laws as described herein.

E.      A judgment awarding Plaintiffs the costs of suit, including reasonable attorneys' fees, and pre and post-judgment interest; and

F.      Such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: March 23, 2017                            **LEVI & KORSINSKY LLP**

                                                 By: */s/ Rosemary M. Rivas*
                                                     Rosemary M. Rivas

                                                 Quentin A. Roberts
                                                 44 Montgomery Street, Suite 650
                                                 San Francisco, California 94104
                                                 Telephone: (415) 291-2420
                                                 Facsimile: (415) 484-1294


                                                 *Counsel for Individual and Representative*
                                                 *Plaintiffs Julie Dean and Suzanne Jones*
                                                 *and the Proposed Class*